**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STENA REDERI AB, | ) | |
| Plaintiff, | ) | No. 06-845 C |
| v. | ) | Judge Margaret M. Sweeney |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF STENA REDERI AB'S**
**MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND THINGS**

Plaintiff Stena Rederi AB ("Stena") seeks an order compelling Defendant the United States ("the government") to produce documents and information from its contractors by invoking the "Notice and Assistance" Clause. Plaintiff's Motion to Compel, Docket No. 24 at 1. The government opposes Plaintiff's motion and responds herein.

This is an action brought under 28 U.S.C. § 1498(a) by Stena seeking reasonable and entire compensation for the alleged unauthorized use or manufacture by or for the United States of Plaintiff's patented invention. Plaintiff's invention is described in U.S. Patent No. 5,269,245 ("the '245 Patent"), entitled "Hull Structure for Multi-Hull Ships." Stena alleges that the Navy vessel named "X-Craft" or "Sea Fighter" includes a hull design that is claimed in the '245 Patent. Several government contractors were involved in the design and construction of X-Craft, including Nigel Gee and Associates, Ltd., Nichols Brothers Boat Builders, and Titan Corporation.[1]

---

[1] International Systems, LLC was acquired by Titan Corporation. Titan Corporation, in turn, was later acquired by L-3 Communications.

Plaintiff interprets the Notice and Assistance Clause to mean that the government has "control" for purposes of RCFC 34(a) over responsive documents belonging to and within the custody and possession of its contractors, who are not parties to the instant litigation. However, Plaintiff is unable to cite any case law in support of its reading of the Notice and Assistance Clause and has advanced a mistaken argument that is contradicted by the plain language and intent of the Clause.

The Notice and Assistance Clause

Federal Acquisition Regulation 52.227-2, commonly known as the Notice and Assistance Clause, provides:

> In the event of any claim or suit against the Government on account of any alleged patent or copyright infringement arising out of the performance of this contract or out of the use of any supplies furnished or work or services performed under this contract, the Contractor shall furnish to the Government, when requested by the Contracting Officer, all evidence and information in possession of the Contractor pertaining to such suit or claim. Such evidence and information shall be furnished at the expense of the Government except where the Contractor has agreed to indemnify the Government.

48 C.F.R. § 52.227-2(b) (1996). The Notice and Assistance Clause is included or incorporated by reference in government procurement contracts. Government contracts N00014-02-C-0466 and N00014-03-C-0150, both of which relate to the allegedly infringing X-Craft, incorporate this Clause. These contracts do not require indemnification of the government by the contractor. Accordingly, the last sentence is an important limitation on the government's utilization of the Clause: the government must pay the contractor for its services in collecting, copying, delivering, and managing the response to the Contracting Officer's request.

The Notice and Assistance Clause does not operate to place non-party documents within the "custody, possession, or control" of the government within the meaning of RCFC 34(a), as Plaintiff has alleged. Plaintiff has not met its burden of proving that the government's relationship with its contractors indicates "control" over the requested documents.

## I. The Notice and Assistance Clause Inures Solely To The Benefit Of The Government

The Notice and Assistance Clause affords a contracting government agency the opportunity and option to request information from its contractor in the event of patent or copyright infringement. Government agencies must negotiate with contractors for the incorporation of the Notice and Assistance Clause. The Clause exists for the benefit of the government and its contractor, and the benefit generally inures to the government agency. Nothing in the text of the Clause indicates that it is intended to benefit plaintiffs in an action against the government, and it would be unreasonable and illogical to construe the Clause in that manner.

The plain language of the Notice and Assistance Clause supports that the government is the intended beneficiary of the Clause's provisions. The Clause requires a contractor to "furnish to the government, when requested by the Contracting Officer, all evidence and information in the possession of the Participant pertaining to such suit or claim." The Clause is intended to facilitate the government's efforts in developing its own defenses, only after the agency involved in the litigation makes a reasoned decision to modify the contract and allocate appropriated funds.

The triggering event for action by a government contractor pursuant to the Clause is a request by the agency's Contracting Officer. The government then assumes all costs incurred by the contractor in responding to a request made pursuant to the Notice and Assistance Clause. The

language of the Clause cannot reasonably be construed to require an agency to commit appropriated funds for the purpose of financing discovery for a private-sector adversary in litigation. To permit a litigation adversary to force the government to avail itself of the Clause would be tantamount to wresting away the Contracting Officer's authority and the agency's discretion over whether to invoke the Clause and thereby incur expense by demanding the services of its contractor.

## II. Plaintiff Fails To Meet Its Burden Of Proving That Defendant's Relationship With Its Contractors Demonstrated That The Government Has "Control" Over The Requested Documents

Plaintiff's motion rests upon little else other than a recitation of the Notice and Assistance Clause and the simple conclusion that the Clause places contractors' documents within the government's "control." Its arguments are misplaced.

The government is aware of no case, and Plaintiff has not cited any, that suggests that a court can require a government agency to invoke the Notice and Assistance Clause. The cases cited by Plaintiff are quoted merely for broad, generic statements about the meaning of "control" under Federal Rule of Civil Procedure 34(a).[2] See Plaintiff's Motion to Compel at 3.

"[A] party seeking production of documents bears the burden of establishing the opposing party's control over those documents." Camden Iron & Metal, Inc. v. Marubeni Am. Corp., 138 F.R.D. 438, 441 (D.N.J. 1991) (citing United States v. Int'l Union of Petroleum & Indus. Workers, 870 F.2d 1450, 1452 (9th Cir. 1989)). To determine whether a party has "control" of material within

---

[2] Aside from the cases not being binding or, in one instance, even published in a recognized reporter, it is particularly telling that none of the cases that Plaintiff cites involve the federal government as a party from which discovery is sought and therefore do not address the Notice and Assistance Clause.

the meaning of Fed. R. Civ. P. 34, courts traditionally have examined the nature of the relationship between the party and the non-party who has physical possession of the records. See generally Afros S.P.A. v. Krauss-Maffei Corp., 113 F.R.D. 127, 129-131 (D.Del. 1986).

Cases involving the issue of "control" of documents under Fed. R. Civ. P. 34(a) often involve complex corporate entities and their interrelationships. See, e.g., Afros, 113 F.R.D. at 130-31 (commenting on cases involving discovery sought from a party's non-party sister corporation or affiliate, and also from a foreign parent corporation through a subsidiary). Courts have considered such factors as "the degree of ownership and control exercised by the parent over the subsidiary, a showing that the two entities operated as one, demonstrated access to documents in the ordinary course of business, and an agency relationship." Camden Iron & Metal, Inc., 138 F.R.D. at 442 (citing Gerling Int'l Ins. Co. v. Comm'r of Internal Revenue, 839 F.2d 131, 140-41 (3d Cir. 1988)). The factors considered by the courts in those cases are notably absent in the instant context. What remains consistent, however, is the courts' method of analysis, examining the nature of the relationship between the party and non-party when determining the responsibility in discovery.

Plaintiff cites Cabot v. United States, 35 Fed. Cl. 80 (1996), and In re Flag Telecom Holdings, Ltd. Sec. Litig., 236 F.R.D. 177 (S.D.N.Y. 2006), in support of its argument. In both of those cases, the relationship between the interrogated party and the non-party in possession of requested documents is different than in the instant case. The Notice and Assistance Clause does not change the agency-contractor relationship into one that would permit the government to exert the type of "control" that would qualify under Fed. R. Civ. P. 34(a).[3]

---

[3] Furthermore, the government's ability to request documents from its contractors under the Notice and Assistance Clause does not transform that assistance into an absolute obligation. Instead, the alleged "legal right" that Plaintiff contends that the government may have

In Cabot, the Court of Federal Claims considered whether to grant the government's motion to compel production of documents from a law firm retained by the plaintiff for another matter. The plaintiff had the power to demand the documents pursuant to a state court order, which clearly stated that documents were to be turned over to the plaintiff upon his written authorization. The Court of Federal Claims granted the government's motion to compel, reasoning that "'[c]ontrol' contemplates not only possession but also the right, authority, or ability to obtain documents." Id. at 83.

The instant case can be distinguished from Cabot because of differences in the parties' authority to demand documents from a non-party. In Cabot, the plaintiff had the absolute right under the state court order to demand that the law firm in physical possession of documents turn them over. Here, in contradistinction, the government's Contracting Officer is armed not with an unfettered right to the contractor's documents; rather, he has only the option to buy the copies and services from the contractor under the Notice and Assistance Clause. Plaintiff has provided no case law that even suggests that a court has the authority to compel the exercise of such an option. This marked difference in the authority of a party to demand documents from a non-party requires a different result from Cabot and a denial of Plaintiff's Motion to Compel.

In another case that Plaintiffs cite, Rosie D. v. Romney, 256 F.Supp.2d 115 (D. Mass 2003), class action plaintiffs filed a motion to compel against a defendant state agency, requesting documents from several non-party agencies. The defendant agency, the Division of Medical Assistance (DMA), "delegate[d] the delivery of behavioral health services to several entities which, in turn, are authorized to engage subcontracted service providers." Id. at 119. DMA had a contract

---

with respect to a contractor's documents is no more a right than Plaintiff might have, for example, pursuant to a court's subpoena.

with the non-party agencies that required them to "maintain books, records, and other compilations of data pertaining to the contract . . . that DMA has the right, upon reasonable notice, to examine and copy." Id. at 119. The court determined that DMA had "control" over those books and records, granting the plaintiffs' motion and ordering the agency to produce the requested documents. Id.

The non-party agencies in Rosie D. thus agreed to maintain documents as a present, ongoing obligation in its contract with defendant DMA. The contract provided for DMA to have the absolute right, given reasonable notice, to access that information. Id. In the instant case, however, the government agency does not possess the "right" to examine or copy documents, but merely the choice to modify the contract and employ the services of its contractor to assist in the litigation. And here, the agency has not opted to invoke the Notice and Assistance Clause and has not appropriated funds for this specific purpose.[4] This difference between the absolute right to documents in Rosie D. and the decision to contract for services in the instant case distinguishes the fact patterns and leads to the conclusion that the government does not have "control" over its contractors' documents.

In the event that the Court grants Plaintiff's Motion to Compel, Plaintiff should be obligated to reimburse the government for expenses incurred as a result of invocation of the Notice and Assistance Clause. Here, in the interest of fairness, Plaintiff should bear the cost of collecting, copying, delivering, and managing the documents that it requests. It would be extraordinary to compel the government to enter into a contract solely for the benefit and convenience of its adversary, and at the same time expect the government to pay for that benefit.

---

[4] Indeed, it is unclear whether a court has the authority to compel an executive agency to invoke the Notice and Assistance Clause, thus forcing it to spend appropriated funds. Such an act may constitute a violation of the separation of powers doctrine or the Antideficiency Act, 31 U.S.C. § 1341 (2000).

**III. Plaintiff Has Failed To Show That Invoking The Notice and Assistance Clause Is Less Burdensome Than For It To Seek Discovery Directly From The Non-Parties**

Plaintiff argues that because it does not have equal access to the requested discovery, particularly from Nigel Gee, a United Kingdom Corporation, Defendant should be required to produce responsive documents. It contends that a simple request is all that would be required, while discovery from Nigel Gee under the Hague Convention allegedly would be "time-consuming, burdensome, less effective, and expensive." Plaintiff's Motion to Compel, Docket No. 24 at 5.

Even if the Court were to reach this issue, Plaintiff errs in concentrating on only one burden: namely, the effort that Plaintiff itself must expend. In fact, Plaintiff misstates the relevant burdens that are at issue.

"The proper standard for discovery requests is to balance the burden on the interrogated party against the benefit to the discovering party of having the information." Pac. Gas & Elec. Co. v. United States, 69 Fed. Cl. 323, 325 (2005) (citations omitted); Hoffman v. United Telecomms., Inc., 117 F.R.D. 436, 438 (D. Kan. 1987). Here, Plaintiff incorrectly focuses the court's attention on the burden that it might endure in discovery, while the pertinent inquiry is whether the government's burden in producing responsive documents is outweighed by the benefit to Plaintiff of having the requested documents. Even a cursory analysis reveals that Plaintiff has not made a sufficient showing to compel discovery.

As detailed above, the agency's Contracting Officer must initiate a request that the contractor provide responsive documents. Thus, the government stands to incur many of the same transactional costs that Plaintiff would. Moreover, Plaintiff fails to make a showing of the benefit of the requested documents. Indeed, Plaintiff has not shown what documents it lacks from the government's

production that may be supplanted by additional production by Nigel Gee or other contractors. Plaintiff has not met its burden to show that the requisite balancing test weighs in favor of granting its Motion to Compel.

Additionally, Plaintiff focuses solely on one particular government contractor, Nigel Gee. However, Plaintiff fails to make any showing that documents and other information from Nigel Gee are relevant to the issues in this case. It is immaterial what Nigel Gee's thought processes were or how it prepared the design.[5] The only question is whether Nigel Gee's hull design for the X-Craft is encompassed by the claims of Stena's '245 patent, and, if so, the infringement inquiry ends. Instead, other contractors (Nichols Brothers Boat Builders and Titan Corporation) are likely to have better information relating to the final design parameters of the hull and how it was actually constructed. These contractors also bear the convenience of being located in the United States, alleviating the Hague Convention concerns outlined by Plaintiff in its Motion.

Plaintiff's argument that the Notice and Assistance Clause provides to Defendant "control" over non-party documents is without merit and should be recognized as an attempt to improperly shift the burden and expense of discovery to the government. This is not to say, however, that Plaintiff is left with no recourse in discovery. On the contrary, Plaintiff can subpoena records from a non-party and enforce that subpoena power to seek information in support of its case. With respect

---

[5] Although these factors may be relevant to willfulness, an issue that arises in patent suits between private litigants, the Court of Claims recognized that plaintiffs may not recover for willfulness under 28 U.S.C. § 1498 and that the statute "is essentially an Act to authorize the eminent domain taking of a patent license." Leesona Corp. v. United States, 599 F.2d 958, 969-70 (1979). "The proper measure in eminent domain is what the owner has lost, not what the taker has gained. . . . Unlike his counterpart in a private infringement suit, he is not entitled to be the recipient of increased damages heaped on other parties as punishment or deterrence." Id. at 969 (citations omitted).

to Nigel Gee, Plaintiff may elect to initiate discovery under the Hague Convention. The expense and effort needed to present its case are factors that Plaintiff presumably considered before filing its suit. It is important to note, however, that Plaintiff has not alleged that it has taken any steps whatsoever to request the documents from the government contractors directly.[6]

## Conclusion

For the above reasons, the Court should deny Plaintiff's Motion to Compel.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JOHN J. FARGO
Director

KIRBY W. LEE
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
Telephone: (202) 307-0335
Facsimile: (202) 307-0345

OF COUNSEL:
GARY L. HAUSKEN
Assistant Director

January 11, 2008

[6] RCFC 26(b)(2)(c) imposes limitations on the use of discovery methods when, as is the case here, the discovery sought is "obtainable from some other source that is more convenient, less burdensome, or less expensive," that is, directly from the contractors themselves.